IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                                    :
COACH, INC. and COACH               :      HON. JEROME B. SIMANDLE
SERVICES, INC.,                     :
                                    :      Civil No. 10-4888 (JBS/KMW)
            Plaintiffs,             :
                                    :
      v.                            :          OPINION
                                    :
FASHION PARADISE, LLC, NAMAN        :
RAFI and DOES 1 THROUGH 10,         :
                                    :
            Defendants.             :
                                    :
```

APPEARANCES:

Christine A. Shaw, Esq.
Michael L. Rosenberg, Esq.
STERNS & WEINROTH, PC
50 West State St.
Trenton, NJ 08607
      Counsel for Plaintiffs


**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

This matter comes before the Court on the motion of Plaintiffs Coach, Inc. and Coach Services, Inc.'s ("Coach" or "Plaintiffs") for default judgment [Docket Item 16] as against Defendants Fashion Paradise, LLC, and Naman Rafi ("Defendants"). For the reasons expressed below, the Court will grant Plaintiffs' motion.

I.   **BACKGROUND**

    **A.   Facts**[1]

    The instant action arises out of the Defendants unlawfully selling counterfeit goods, knowingly and intentionally for the purpose of trading on the reputation of the Plaintiff.  The Plaintiff maintains that the Defendants will continue to do so unless otherwise restrained. (Am. Compl. ¶¶ 30, 32.)

    Coach is a manufacturer and distributor of luxury fashion accessories.  Coach sells its goods through its own specialty retail stores, department stores, catalogs, and via the Internet throughout the United States.  Coach owns a number of trademarks, trade dresses, and design elements/copyrights that it uses on its products.

    Based on information obtained from a private investigator and Coach staff, Coach alleges that Defendants Fashion Paradise, LLC, and registered owner Naman Rafi have sold counterfeit Coach items at the store located at 2607-A Boardwalk, Atlantic City, New Jersey.  (Am. Compl. ¶¶ 6, 27; Drobny Decl. ¶¶ 3-4.)  For example, Defendants sold a $16.04 imitation of a $98.00 Coach belt that bore three Coach trademarks.  (Am. Compl. ¶ 27B,C.)

---

[1] The facts recited herein are derived from the Plaintiffs' supporting declaration, including private investigator Stuart Drobny and Coach's Counsel for Intellectual Property Tiffany Walden, and documents attached thereto.

Neither Fashion Paradise, LLC, nor Naman Rafi have been given permission to use the Coach trademarks.  (Walden Decl. ¶ 12; Am. Compl. ¶ 29.)

### B.   Procedure

On September 22, 2010, the Plaintiffs filed a ten-count complaint against Defendants and ten John Does presenting claims of trademark counterfeiting (15 U.S.C. § 1114), trademark infringement (15 U.S.C. § 1114), trade dress infringement (15 U.S.C. § 1125(a)), false designation of origin and false advertising (15 U.S.C. § 1125(a)), trademark dilution (15 U.S.C. § 1125(c)), copyright infringement (17 U.S.C. §§ 501 et seq.), trademark counterfeiting (N.J. Stat. Ann. § 56:3-13.16), unfair competition (N.J. Stat. Ann. §§ 56:4-1 et seq.), common law trademark infringement, and  unjust enrichment.  Plaintiffs served Defendant Fashion Paradise, LLC, and Defendant Naman Rafi with a copy of the summons and complaint on October 9, 2010. [Docket Items 7 and 8.]

Plaintiffs then amended their complaint on November 2, 2010. [Docket Item 9.]  The Amended Complaint alleges the same ten causes of action detailed above.  Plaintiffs served Defendant Fashion Paradise, LLC, and Defendant Naman Rafi with a copy of the summons and Amended Complaint on November 24, 2010.  [Docket Item 11.]

Despite being properly served, the Defendants have failed to

3

respond to the Amended Complaint.  On February 23, 2011, Plaintiffs filed a request for default, which the Clerk of Court entered pursuant to Rule 55(a), Fed. R. Civ. P., on February 24, 2011. [Docket Items 13 and 14.]  Plaintiffs now move the Court to enter a default judgment against Defendants and seek a permanent injunction, statutory damages, and an award of attorney fees, investigator fees, and costs. [Docket Item 16.]

III.  DISCUSSION

Fed. R. Civ. P. 55(b)(2) authorizes the entry of a default judgment against a party that has defaulted.  However, default judgment is not a right.  The decision about whether default judgment is proper is primarily within the discretion of the district court.  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

A.  Standard of Review

Once a party has defaulted, the consequence is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).  Entry of default judgment where damages are not a sum certain requires an application to the Court to prove, inter alia, damages.  Fed. R. Civ. P. 55(b)(2); Comdyne, 908 F.2d at 1149.  In addition, liability is not established by default alone.  D.B. v. Bloom,

4

896 F. Supp. 166, 170 n.2 (D.N.J. 1995) (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2681 (2d ed. 1983)).  The Court must determine whether a sufficient cause of action was stated, Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008), and whether default judgment is proper. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

**B.   Sufficiency of Causes of Action**

In the present case, after being properly served on November 24, 2010, the Defendants failed to appear or otherwise defend, and the Clerk of the Court entered a default.  Therefore, the first issue is whether the Plaintiffs have stated a sufficient cause of action.  As will be explained below, the Court determines that Coach has established Defendants' liability for the purposes of this default judgment motion.

1.   Federal Claims

In their Amended Complaint, Plaintiffs have asserted six federal claims against the Defendants: trademark counterfeiting (15 U.S.C. § 1114(1)(a)); trademark infringement (15 U.S.C. § 1114(1)(a)); trade dress infringement (15 U.S.C. § 1125(a)); false designation of origin and false advertising (15 U.S.C. § 1125(a)(1)(A)); trademark dilution (15 U.S.C. § 1125(c)); and copyright infringement (17 U.S.C. §§ 501 et seq.).  As discussed below, each was stated sufficiently to establish liability based on federal law.

**a.  Trademark Infringement (15 U.S.C. §
1114(1)(a)) and False Designation (15 U.S.C.
§ 1125(a)(1)(A))**

Trademark infringement (Count II) and false designation
(Count IV) are measured by identical standards.  A & H Swimwear,
Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d
Cir. 2000).  The record must show: (1) the plaintiff has a valid
and legally protectable mark, (2) the plaintiff owns the mark,
and (3) the defendant's use of the mark causes a likelihood of
confusion.  Id.

The first two elements are satisfied by the Plaintiffs'
registration and ownership of the relevant trademarks.  (Am.
Compl. ¶¶ 14-15.)  The third element is also satisfied.  In the
Amended Complaint (Am. Compl. ¶¶ 43-44) and through exhibits,
(e.g. Drobny Decl., Ex. A) the record has uncontested assertions
and evidence that are sufficient to show a likelihood of
confusion between the counterfeit belt and the genuine Coach
product.  Specifically, the photographs of the belt purchased by
the investigator on August 30, 2010, clearly show a reproduction
of the "Coach Op Art" registered trademark, the "Signature C"
registered trademark, and the "Coach" registered trademark.
(Drobny Decl. Ex. A; Am. Compl. ¶ 14.)  Further, it is reasonable
to believe that some consumers would be confused by these
counterfeit products.  See Coach, Inc. v. Cellular Planet, Civ.

No. 09-00241, 2010 WL 1853424, at *1, *4 (S.D. Ohio, May 7, 2010) (holding that although the counterfeit items could be distinguished from genuine Coach items because they were being sold out of a trunk of a car, the counterfeit nature of the products meant they were inherently likely to cause confusion). Therefore, a cause of action for trade infringement and false designation has been sufficiently established.

### b. Trademark Counterfeiting (15 U.S.C. § 1114(1)(a))

To establish trademark counterfeiting (Count I) the record must show (1) the defendant infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (2) the defendant intentionally used the trademark knowing it was counterfeit or was willfully blind to such use. Chanel v. Gordashevsky, 558 F. Supp. 2d at 537. "The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit." Id. at 536-537. The Third Circuit has stated that "willful" infringement "involves an intent to infringe or a deliberate disregard of a mark holder's rights." Securacomm Consulting Inc. v. Securacom Incorporated, 166 F.3d 182, 187 (3d Cir. 1999) superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v.

Renosky, 399 F.3d 182, 187 (3d Cir. 1999).  Such willful conduct
can be shown through "deliberate and unnecessary duplicating of a
plaintiff's mark . . . in a way that was calculated to
appropriate or otherwise benefit from the good will the plaintiff
had nurtured."  Id. quoting W.E. Bassett Co. v. Revlon, Inc., 435
F.2d 656, 662 (2d Cir. 1970) (internal punctuation omitted).

Here, both elements of trademark counterfeiting are met.  It
has already been established that Defendants infringed the "Coach
Op Art" trademark, the "Signature C" trademark, and the "Coach"
trademark.  In addition, Coach alleges that Defendants'
infringement and counterfeiting was willful and intentional.
(Am. Compl. ¶ 30.)  Coach has also alleged, and the Court must
now accept as true, that "products bearing the Coach Marks are
widely recognized and exclusively associated by consumers, the
public, and the trade as being high quality products sourced from
Coach."  (Am. Compl. ¶ 13.)  Such well-known brands "are often
imitated in order to profit from the company's reputation for
high-end products."  Coach, Inc. v Cosmetic House, Civ. No. 10-
2794, 2011 WL 1211390 at * 4 (D.N.J., March 29, 2011).  The Court
infers from the sale of the infringing belt bearing the
unmistakable Coach logo that the counterfeiting here meets the
Third Circuit standard of willfulness.  Therefore, a cause of
action for trademark counterfeiting has been sufficiently
established.

### c.  Trade Dress Infringement (15 U.S.C. § 1125(a))

To establish trade dress infringement (Count III), a plaintiff must show: (1) the allegedly infringing design is non-functional, (2) the design is inherently distinctive or has acquired secondary meaning, and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product.  McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007).

Each of these elements was alleged in the Amended Complaint, (Am. Compl. ¶¶ 51-58) and was not contested.  The Court is therefore satisfied that the Plaintiffs have a meritorious claim for trade dress infringement based on the non-functional nature of the infringing design, the distinctiveness of the Coach elements, and the likelihood of confusion.

### d.  Trademark Dilution (15 U.S.C. § 1125(c))

Plaintiffs also sufficiently allege facts as to Count V.  To establish trademark dilution under the Lanham Act a plaintiff must prove:

> (1) the plaintiff is the owner of a mark that qualifies as a 'famous' mark in light of the totality of eight factors listed in § 1125(c)(1); (2) the defendant is making commercial use in interstate commerce of a mark or trade name; (3) defendant's use began after the plaintiff's mark became famous; and (4) defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.

<u>Times Mirror Magazine, Inc. v. Las Vegas Sports News, LLC</u>, 212
F.3d 157, 163 (3d Cir. 2000); <u>800-JR-Cigar, Inc. v. GoTo.com,
Inc.</u>, 437 F. Supp. 2d 273, 293 (D.N.J. 2006).

As set forth in the Amended Complaint, Plaintiffs have
sufficiently alleged facts supporting the first and fourth
elements; that the relevant Coach marks are "famous" and
Defendants' actions lessen the capacity of such marks to identify
and distinguish Coach products.  (Am. Compl. ¶¶ 66-68.)  The
interstate nature of the commerce and the timing of the
Defendants' use of the mark are not perfectly clear from the
record.  Private investigator Stuart Drobny, employed by a
Pennsylvania investigative firm, purchased a belt at Defendants'
store (Drobny Decl. ¶¶ 2, 4), which is evidence that the
Defendants' infringing goods have traveled in interstate
commerce.  More importantly, the quantum of commercial activity
needed to demonstrate interstate commerce is not great; even in a
criminal case, interstate commerce is satisfied by the mere fact
that a contraband article, such as a firearm, was manufactured
outside the state in which it was found when it was possessed.
18 U.S.C. § 922(g); <u>see</u> <u>United States v. Gatlin</u>, 613 F.3d 374,
380 (3d Cir. 2010) (finding evidence that weapon traveled in
interstate commerce from, <u>inter</u> <u>alia</u>, fact that weapon was seized
in Delaware, "and no handguns have been manufactured in Delaware
in nearly 100 years.").  The location of Defendants' store on the

Boardwalk in Atlantic City--a main destination for interstate travelers--also suggests that a substantial part of Defendants' customers will have traveled interstate before and after making their purchases of the infringing items.  Consequently, there is evidence to support the Court's conclusion that the Defendants are involved interstate commerce.

Regarding the fourth element, given that Plaintiffs' trademarks have been in existence for several decades and used continously without abandon (Am. Comp. ¶¶ 11-19), the Court concludes that Defendants' use began after the mark in question became famous.  Consequently, the Court will accept that these elements are satisfied and a cause of action for trademark dilution has been established.

### e.   Copyright Infringement (17 U.S.C. §§ 501-513)

To establish copyright infringement pursuant to 17 U.S.C. §§ 501-513, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991); Dam Things from Denmark v. Russ Berrie & Co., Inc., 290 F.3d 548, 561 (3d Cir. 2002).  The copying element can be proven by showing that the defendant had access to the work and there are substantial similarities between the two works.  Dam Things, 290 F.3d at 561.

Both elements have been sufficiently asserted to state a

cause of action for copyright infringement.  (Am. Compl. ¶¶ 74-
80.)  Specifically, Coach has alleged that it has a valid
copyright in the "Op Art" design (Am. Compl. Ex. A) which
Plaintiffs allege was copied on the belt purchased by Plaintiffs'
investigator.  (Am. Compl. ¶ 76.)  Therefore, a cause of action
for copyright infringement has been established.

2.  <u>State Claims</u>

In their Amended Complaint Plaintiffs have also asserted
four state law claims: trademark counterfeiting (N.J. Stat. Ann.
§ 56:3-13.16); unfair competition (N.J. Stat. Ann. §§ 56:4-1,
56:4-2); common law trademark infringement; and unjust
enrichment.  As discussed below, the state common law claims were
sufficiently stated, and because federal liability has already
been established, state statutory liability is also met.

**a.   State Statutory Claims**

N.J. Stat. Ann. § 56:3-13.16 provides civil liability
against a person who engages in trafficking of counterfeit marks
and N.J. Stat. Ann. § 56:4-2 provides civil liability against a
person who appropriates trademarks.  These state law claims are
similar to the federal Lanham Act claims, and this Court has
found liability under federal law to be sufficient to establish
liability under state law.  <u>See</u> <u>Axelrod v. Heyburn</u>, Civ. No. 09-
5627, 2010 WL 1816245, at *3 (D.N.J. May 3, 2010); <u>Zinn v.
Seruga</u>, Civ. No. 05-3572, 2009 WL 3128353, at *27-*28 (D.N.J.

12

Sept. 28, 2009); <u>N.V.E., Inc. v. Day</u>, Civ. No. 07-4283, 2009 WL 2526744, at *2 (D.N.J. Aug. 18, 2009).

Therefore, because Plaintiffs have sufficiently stated their federal claims for trademark counterfeiting, the Plaintiffs have also stated a claim for trademark counterfeiting under N.J. Stat. Ann. § 56:3-13.16 and unfair competition under N.J. Stat. Ann. §§ 56:4-1, 56:4-2.

### b.   Common Law Trademark Infringement

The Plaintiffs have also stated a claim for common law trademark infringement.  (Am. Compl. ¶¶ 95-99.)  As with the state statutory claims, liability for common law trademark infringement is established when a defendant violates the federal Lanham Act for trademark infringement.  <u>Coach, Inc. v. Cosmetic House</u>, Civ. No. 10-2794, 2011 WL 1211390 at * 5 (D.N.J., March 29, 2011); <u>Major League Baseball Promotion Corp. v. Colour-Tex, Inc.</u>, 729 F. Supp. 1035, 1039-40 (D.N.J. 1990).  Therefore, the Court finds that Plaintiffs have sufficiently stated a claim for common law trademark infringement.

### c.   Unjust Enrichment

Finally, the Plaintiffs have stated a claim under New Jersey common law for unjust enrichment.  (Am. Compl. ¶ 104.)  Here the Defendants were profiting from counterfeit items based on Coach's reputation.  It would be unjust for the Defendants to enrich themselves without compensating the Plaintiffs, so a cause of

action for unjust enrichment has been established.  See Howard
Johnson Int'l, Inc. v. Vraj Brig, LLC, Civ. No. 08-1466, 2010 WL
215381, at * 9 (D.N.J. Jan. 14, 2010) (citing Kopin v. Orange
Prod.s, Inc., 297 N.J. Super. 353, 366-68 (N.J. Super. Ct. App.
Div. 1997)).

     In sum, each count of the Amended Complaint stated a
sufficient cause of action that is supported  by evidence in the
record.  The Court now turns to whether default judgment is
proper.

     **C.   Default Judgment**

     "Before imposing the extreme sanction of default [judgment],
district courts must make explicit factual findings as to (1)
whether the party subject to default has a meritorious defense,
(2) the prejudice suffered by the party seeking default, and (3)
the culpability of the party subject to default."  Doug Brady,
Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177
(D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71,
74 (3d Cir. 1987)).

     The current record does not show any meritorious defenses.
Because the Defendants did not respond, the Court cannot
determine whether the Defendants had meritorious defenses that
are not reflected in the record.  The Court therefore finds that
Defendants have no meritorious defense.  The Court also finds
that Plaintiffs have been prejudiced by the Defendants' failure

14

to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion.  Defendants were properly served, yet failed to appear or defend themselves in any fashion.  It has been over a year since Defendants were served with the Amended Complaint, and Defendants have failed to contact the Court or the Plaintiffs.  This shows the Defendants' culpability in their default.  See Platypus Wear v. Bad Boy Club, Inc., No. 08-2662, 2009 WL 2147843, at *5 (D.N.J. July 15, 2009).  Thus, the Court finds that Plaintiffs are entitled to default judgment against Defendants Fashion Paradise, LLC, and Naman Rafi.

**D.  Remedies**

1.  Lanham Act Statutory Damages

The Lanham Act provides that a plaintiff can elect to recover either actual damages based on the defendant's profits and the plaintiff's damages (15 U.S.C. § 1117(a)) or statutory damages (15 U.S.C. § 1117(c)).  The Plaintiffs have elected to recover statutory damages.  (Pls.' Br. in Supp. Mot. for Default J. and Permanent Inj., 9.)  As discussed below, after considering past awards in this District, the point of sale, the extent of sales, and the lack of evidence concerning Plaintiffs' losses, the Court will award $450,000 in statutory damages for Defendants' Lanham Act violations.

For statutory damages under the Lanham Act, the plaintiff

15

may recover "not less than $1,000 or more than $200,000 per
counterfeit mark per type of goods or services sold, offered for
sale, or distributed, as the court considers just."  15 U.S.C. §
1117(c)(1)).  If the use of the counterfeit mark was willful, the
maximum increases to $2,000,000 per mark per type of good.  15
U.S.C. § 1117(c)(2).  As stated above, for use to be willful, a
defendant must show an "aura of indifference to plaintiff's
rights" or a "deliberate and unnecessary duplicating of a
plaintiff's mark . . . in a way that was calculated to
appropriate or otherwise benefit from the good will the plaintiff
had nurtured."  SecuraComm, 166 F.3d at 187.

"In the absence of clear guidelines for setting a statutory
damage award, courts have tended to use their wide discretion to
compensate plaintiffs, as well as to deter and punish defendants,
often borrowing from factors considered for statutory damages in
copyright infringement."  Louis Vuitton Malletier & Oakley, Inc.
v. Veit, 211 F. Supp. 2d 567, 583-84 (E.D. Pa. 2002) (citing
cases showing wide range of statutory damages awarded by district
courts).  Because statutory damages are meant to serve as a
substitute for actual damages the Court should discern whether
the requested damages "bear some relation to the actual damages
suffered."  Bly v. Banbury Books, Inc., 638 F. Supp. 983, 987
(E.D. Pa. 1986); see also Gucci Am. V. Duty Free Apparel, Ltd.,
315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("To the extent

16

possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'") (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04[E][1], at 14-69 (2003.))

To assess whether the request is appropriate, the Court may be guided by past statutory damage awards.  See Louis Vuitton Malletier, S.A. v. Mosseri, No. 07-2620, 2009 WL 3633882, at *3 (D.N.J. Oct. 28, 2009); N.V.E., 2009 WL 2526744, at *3-*4; Veit, 211 F. Supp. 2d at 583-84.  In a recent survey, see Coach Inc. v. Ocean Point Gifts, Civ. No. 09-4215, 2010 WL 2521444 at * 6-7 (D.N.J. June 14, 2010), this Court determined that statutory damage awards for Lanham Act violations in this District are influenced in part by the point of sale of the infringing goods, specifically in cases of counterfeit goods sold on the Internet, and influenced in part on the monetary value of the item counterfeited.  In the Ocean Point Gifts case, the Court, guided by Platypus Wear, 2009 WL 2147843, awarded $10,000 per counterfeit mark per type of good sold.  Ocean Point Gifts at * 7.  The Court concluded that, because "the counterfeit products at issue were not widely distributed via the Internet" the damage award should not be as high as Internet-distribution cases of luxury goods cited by Plaintiffs, such as Luis Vuitton Malletier, S.A. v. Mosseri, 211 F. Supp. 2d at * 3.

In the instant case, five types of goods were sold by the

17

Defendant that carried counterfeit Coach marks: handbags, wallets, scarves, belts and shoes.  (Drobny Decl. ¶ 4.)  Three Coach trademarks were infringed: "Coach Op Art" (Registration No. 3,696,470); "Signature C" (Registration Nos. 2,626,565; 2,822,318; 2,592,963)and "Coach" (Registration Nos. 1,071,000; 2,231,001; 0,751,493).  Plaintiffs have produced some evidence of the scale of Defendants' operations, which included "approximately 50 handbags, 15 wallets, 10 scarves, 5 belts [and 5] and 3 pairs of shoes, all bearing Coach trademarks and designs."(Drobny Decl. ¶ 4.)  All these items were observed by a private investigator on a single day in Defendants' Fashion Paradise store on August 30, 2010.  Id.

Because there are five types of goods and three marks, the total statutory damage amount must be not less than $15,000 nor more than $30,000,000.  The Plaintiffs have requested one hundred times the minimum statutory damages, $100,000 per mark per good for a total of $1,500,000.

In fixing the amount of statutory damages, the Court will follow the approach of Platypus Wear which considered the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

18

2009 WL 2147843, at * 7 (citing Phillip Morris USA, Inc. v. A&V
Minimarket, Inc., 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009)).

     In considering these factors, the Court will award $30,000
per infringement for a total of $450,000, thirty times the
minimum statutory damages.  This amount is within the guidelines
established by Congress, takes into account Defendants'
culpability, and is significant enough to serve as compensation
to the Plaintiffs and a deterrent to both the Defendant and
others.  This award also acknowledges that the sales took place
at a small shop on the boardwalk rather than the Internet.[2]  In
addition, this amount takes into account Defendant Naman Rafi's
repeated unlawful conduct in using Plaintiffs' trademarks.[3]

[2] The Plaintiffs rely on Chanel Inc. v. Craddock, No. 05-1593,
2006 WL 1128733 (D.N.J. April 27, 2006), to support their request
for $100,000 in damages per infringement.  However, that case is
distinguishable from the case at bar.  In Craddock, the court
awarded $100,000 per infringement based on several factors not
present in the instant action such as the extensive inventory of
counterfeit goods, the high prices the counterfeit products
commanded and the defendant's decision to continue selling
counterfeit goods on the Internet.  These factors are not
relevant here where the Defendants' inventory was not extensive,
the counterfeit goods were sold at modest prices and there is no
evidence of any Internet sales.  Therefore, Craddock is
inapplicable to the instant case.

[3] In Coach et al. v. Bags & Accessories and Naman Rafi, Civ. No.
10-2555 (D.N.J. 2011), default judgment was entered against
Defendant Naman Rafi for infringing two Coach trademarks and one
Coach copyrighted design in selling four types of goods at
Defendant Bags & Accessories, another small shop on the Atlantic
City Boardwalk.  The Court awarded Plaintiff Coach $94,454.30 in
statutory damages; however, Defendant Naman Rafi does not seem to
be deterred, as his Fashion Paradise store continued to sell
counterfeit Coach goods in August 2010 even after he was served
with process in the Bags & Accessories case in mid-2010.  This

2.   Plaintiffs' Damages for Counts III through X

In addition to statutory damages under the Lanham Act, Plaintiffs' Amended Complaint also seeks statutory damages for trade dress infringement, false designation of origin and false advertising, trademark dilution, copyright infringement, trafficking under N.J.S.A. § 56.3-13.16; unfair competition under N.J.S.A. § 56.4-1, common law trademark infringement and unjust enrichment.  (Am. Compl. ¶ G.)  However, the allowed scope of monetary damages for these claims is encompassed under the Lanham Act, 15 U.S.C. § 1117, discussed above, and the Plaintiffs concede in their brief that they are not entitled to a double recovery. (Pls.' Br. 12.)   Therefore, the Court will not award damages as to Counts III through X beyond those awarded above under the Lanham Act.

3.   Costs and Attorney Fees

In addition to statutory damages, Plaintiffs ask for both attorney fees and costs, which their evidence shows to be $5,435.00 for attorney fees, $147.43 for investigative fees, and $552.66 for costs.[4]

---

brazenness justifies a three-fold multiplier over the prior award of statutory damages.

[4] In their brief, Plaintiffs request $5,446.04 in attorney fees and $541.62 in costs.  (Pls.' Br. at 14-15).  In support of their request, the Plaintiffs attach two invoices.  The first invoice accounts for $541.62 in costs.  However, the second invoice from Sterns & Weinroth (Rosenberg Decl. Ex. C) provides an accounting of attorney fees at $5,435.00 and Disbursements of $11.04 for Photocopying ($1.60), Color Copies ($9.00) and Postage ($0.44).

The costs of actions brought under § 43(a), § 43(d), or a willful violation under § 43(c) of the Lanham Act (codified at 15 U.S.C. § 1117(a), (d), & (c), respectively) can be recovered pursuant to § 35(a) (codified at 15 U.S.C. § 1117(a)).  In "exceptional cases" the court may award reasonable attorney fees. 15 U.S.C. § 1117(a).  "Exceptional" has been interpreted by the Court to mean involving culpable conduct.  Securacomm, 224 F.3d at 280.  Because this case involved the culpable conduct of Defendants, attorney fees and costs will be awarded to the Plaintiffs.  See Louis Vuitton v. Mosseri, 2009 WL 3633882, at *4; Chanel v. Gordashevsky, 558 F. Supp. 2d at 539.

Attorneys fees can includes fees for investigators working under the direction of an attorney.  Chanel v. Gordashevsky, 558 F. Supp. 2d at 539 (citing Louis Vuitton S.A. v. Downtown Luggage Ctr., 706 F. Supp. 839, 842 (S.D. Fla. 1988)).  Thus, in this case the fees that the Plaintiffs have paid to the investigative firm in the amount of $147.43 will be included in the award.

### 4.   Permanent Injunction

Plaintiffs also seek the equitable relief of a permanent injunction to enjoin the Defendants from infringing Plaintiffs' trademarks.  This request is consistent with 15 U.S.C. § 1116(a). The Supreme Court requires that any plaintiff seeking a permanent

---

The Court considers these Disbursements as costs, and will award $11.04 in addition to the $541.62 in costs from the first invoice and the Court will award attorney fees in the amount of $5,435.00 instead of $5,446.04.

injunction to show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006) (citations omitted).

### a.   Irreparable Injury

The Third Circuit has explicitly stated that "once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury."  Pappan Enter.s, Inc. v. Hardee's Food Sys.s, Inc., 143 F.3d 800, 805 (3d Cir. 1998) (quoting Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 1976 (3d Cir. 1990)).  Thus, because a likelihood of confusion has been shown, the requirement of irreparable harm has been met.

### b.   Inadequacy of Remedies at Law

While a remedy at law would provide a degree of monetary relief, it will not compensate for the injury to Plaintiffs' reputation or necessarily prevent future trademark infringement. Louis Vuitton v. Mosseri, 2009 WL 3633882 at *5; see also Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006) (stating when there is potential for future harm there is no adequate remedy at law). A remedy at law would be inadequate to compensate the Plaintiffs.

**c.   Balancing of Hardships**

The only hardship imposed upon the Defendants is that they obey the law.  On the other hand if an injunction were not issued then Plaintiffs suffer the hardships that gave rise to this suit: loss of reputation and sales.  Louis Vuitton v. Mosseri, 2009 WL 3633882 at *5 (citing Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 882-83 (S.D. Ohio 2007).

**d.   Public Interest**

The Third Circuit has recognized that the public interest weigh in favor of trademark enforcement because "there is a public interest in the protection of the trademark and to avoid confusion in the public." Bill Blass, Ltd. v. SAZ Corp., 751 F.2d 152, 156 (3d Cir. 1984) (cited in Opticians Ass'n, 920 F.2d at 197).  Issuing an injunction will serve the public interest goals of preventing consumer confusion and the trademark holder's property interest.  Microsoft, 490 F. Supp. 2d at 883.  Here the public interest is served by issuing an injunction.

Because each of the eBay requirements have been met by Plaintiffs, the Court will grant Plaintiffs the relief they seek by enjoining Defendants Fashion Paradise, LLC, and Naman Rafi from infringing Plaintiffs' trademarks and copyrights.  Fashion Paradise, LLC, must also surrender the infringing products for destruction by freight prepaid to the Plaintiffs.

In sum, the Court will grant $450,000 in statutory damages

23

under the Lanham Act, $5,435.00 for attorney fees, $147.43 for investigative fees, and $552.66 for costs, bringing Plaintiffs' total recovery from Defendants to $456,135.09.  In addition, the Court will permanently enjoin Fashion Paradise, LLC, and Naman Rafi from infringing Plaintiffs' trademarks and copyrights in the future and require them to surrender to Plaintiffs all infringing products they currently possess.

**III. CONCLUSION**

For the foregoing reasons the Court will grant the Plaintiffs' motion for default judgment, award a default judgment of $456,135.09, and issue a permanent injunction.  The accompanying order for default judgment and permanent injunction shall be entered.

The accompanying Judgment and Permanent Injunction will be entered.

**January 20, 2012**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge

24